UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **JANE DOE 1**<br>c/o Spangenberg Shibley & Liber LLP<br>1001 Lakeside Ave. East, Suite 1700<br>Cleveland, OH 44114 | ) CASE NO. 3:20-cv-513<br>)<br>) JUDGE<br>) |
| and | ) |
| **JANE DOE 2**<br>c/o Spangenberg Shibley & Liber LLP<br>1001 Lakeside Ave. East, Suite 1700<br>Cleveland, OH 44114 | )<br>)<br>)<br>) |
| and | ) **COMPLAINT FOR DAMAGES**<br>)<br>) *[Jury Demand Endorsed Hereon]* |
| **JANE DOE 3**<br>c/o Spangenberg Shibley & Liber LLP<br>1001 Lakeside Ave. East, Suite 1700<br>Cleveland, OH 44114 | )<br>)<br>)<br>) |
| and | )<br>) |
| **JANE DOE 4**<br>c/o Spangenberg Shibley & Liber LLP<br>1001 Lakeside Ave. East, Suite 1700<br>Cleveland, OH 44114 | )<br>)<br>)<br>) |
| and | )<br>) |
| **JANE DOE 5**<br>c/o Spangenberg Shibley & Liber LLP<br>1001 Lakeside Ave. East, Suite 1700<br>Cleveland, OH 44114 | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )<br>) |
| **ROB STRECK**<br>**MONTGOMERY COUNTY SHERIFF**,<br>*In His Official Capacity*<br>345 West Second Street<br>Dayton, OH 45422 | )<br>)<br>)<br>)<br>) |

and        )

**MONTGOMERY COUNTY SHERIFF'S** )
**DEPUTY WILLIE TEMPLETON, JR.**, )
*In His Official Capacity*    )
345 West Second Street    )
Dayton, OH 45422     )
            )
  and       )

**MONTGOMERY COUNTY SHERIFF'S** )
**MAJOR JEREMY ROY**,    )
*In His Official Capacity*    )
345 West Second Street    )
Dayton, OH 45422     )
            )
      Defendants. )

Now come Plaintiffs, Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, and Jane Doe 5, and for their Complaint against the above-named Defendants, state and aver as follows:

## INTRODUCTION

1.  This action is sadly not the first of its kind. It marks the third time in three years that women detained at the Montgomery County Jail have sued for being sexually assaulted by Montgomery County Sheriff's Deputies at the Jail in violation of their rights and the law. While these assaults happened to different women and were perpetrated by different deputies, they all share similarities in terms of how and where these women were assaulted. These assaults are not only a direct result of the reprehensible conduct of government agents, but also the policies and customs at the Montgomery County Sheriff's Office, which was and is consciously and deliberately indifferent to the rights and safety of its female detainees and visitors, including Plaintiffs.

2

2.      This is a civil rights action in which the Plaintiffs seek relief for violations of their rights secured and guaranteed by Title 42, Section 1983 of the United States Code ("U.S.C."), the Fourth, Eighth and/or Fourteenth Amendments to the United States Constitution, the laws of the United States, and the laws of the State of Ohio.

3.      The Plaintiffs' claims arise from Montgomery County Sheriff's Deputy Willie Templeton, Jr.'s rape and sexual assault of multiple different women, including Plaintiffs Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, and Jane Doe 5, as well as Montgomery County Sheriff's Major Jeremy Roy's oral rape and sexual assault of Plaintiff Jane Doe 2, while acting under the color of law and in violation of the Plaintiffs' known and clearly established constitutional rights, as well as the laws of the State of Ohio.

4.      The Plaintiffs' claims also arise from the Montgomery County Sheriff's Office's: 1) failure to train and/or supervise and/or investigate and punish its officers, including Deputy Willie Templeton and Major Jeremy Roy; 2) promulgation of unconstitutional customs, policies, and/or practices, which proximately caused the violations of Plaintiffs' clearly established constitutional rights as alleged in this Complaint; and 3) ratification of the unconstitutional conduct of its officers, including Deputy Willie Templeton and Major Jeremy Roy.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as certain claims asserted herein arise under the Constitution and laws of the United States, to wit, the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

6.      Pendant jurisdiction over the state law claims asserted herein is invoked pursuant to 28 U.S.C. § 1367.

7.      Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

8.      Pursuant to Southern District of Ohio Local Civil Rule 3.1, this case is Related to Case No. 3:18-cv-00409-TMR-SLO, in that it arises from the same or substantially identical transactions, happenings, or events; calls for a determination of the same or substantially identical questions of law or fact; and would entail a substantial duplication of effort and expense by the Court and the parties if heard by different Judges.

**PARTIES**

9.      Plaintiff Jane Doe 1 is a former detainee at the Montgomery County Jail residing in the Southern District of Ohio.

10.      Plaintiff Jane Doe 2 is a former detainee at the Montgomery County Jail residing in the Southern District of Ohio.

11.      Plaintiff Jane Doe 3 is a former detainee at the Montgomery County Jail residing in the Southern District of Ohio.

12.      Plaintiff Jane Doe 4 is a former detainee at the Montgomery County Jail residing in the Southern District of Ohio.

13.      Plaintiff Jane Doe 5 is a former detainee at the Montgomery County Jail residing in the Southern District of Ohio.

14.      At all times relevant, Defendant Sheriff Streck or his predecessor, former Montgomery County Sheriff Phil Plummer, was the lawful Sheriff of Montgomery County, Ohio and, through the Montgomery County Sheriff's Office and its employees and agents,

was the Sheriff of a duly authorized law enforcement agency, with the ability to sue and be sued, residing in Montgomery County in the Southern District of Ohio.

15.    Defendant Sheriff Streck is a "person" as defined under 42 U.S.C. Section 1983.

16.    At all times relevant, Defendant Sheriff Streck was responsible for the administration, operation and supervision of the Montgomery County Jail/detention system and facilities, including the Montgomery County Jail, and for the promulgation, enforcement, and review of rules, regulations, policies, customs, and practices relevant thereto, who was acting under color of law. Defendant Sheriff Streck was similarly responsible for the supervision and training of the Deputies working in and around the Montgomery County Jail and for the Montgomery County Sheriff's Office, such as Defendants Templeton and Roy. Defendant Sheriff Streck is sued in his official capacity and all references to Defendant Sheriff Streck herein include reference to former Montgomery County Sheriff Phil Plummer in his official capacity.

17.    Defendant Sheriff Streck operated, maintained and/or controlled the Montgomery County Jail at which Plaintiffs were detained, during which time they were under the exclusive custody, control and care of Defendant Sheriff Streck, including the employees and agents of the Montgomery County Sheriff's Office, such as Defendants Templeton and Roy.

18.    At all times relevant, Defendant Sheriff Streck was under a non-delegable duty to promulgate policies, practices, procedures and/or customs to ensure that visitors or detainees at the Montgomery County Jail were not subjected to excessive and/or unreasonable force in violation of their constitutional rights.

5

19.     At all times relevant, Defendant Sheriff Streck was under a non-delegable duty to refrain from using excessive and/or unreasonable force on those visiting or detained at the Montgomery County Jail, and to ensure that visitors or detainees at the Montgomery County Jail were not subjected to excessive and/or unreasonable force in violation of their constitutional rights.

20.     At all times relevant, Defendant Sheriff Streck was under a non-delegable duty to promulgate policies, practices, procedures and/or customs to ensure that detainees at the Montgomery County Jail were provided with due process, personal security, and bodily integrity from sexual abuse or sexual assault.

21.     At all times relevant, Defendant Sheriff Streck was under a non-delegable duty to adequately investigate and take necessary responsive action in relation to any and all instances or concerns over sexual assaults and inappropriate sexual contact taking place at the Montgomery County Jail.

22.     At all times relevant, Defendant Willie Templeton, Jr. was a Montgomery County Sheriff's Deputy acting within the course and scope of his employment with the Montgomery County Sheriff, and under the color of law. Defendant Templeton perpetrated and was directly responsible for the rape and sexual assault of each of the Plaintiffs as alleged herein and is sued in his individual capacity.

23.     Defendant Templeton is a "person" as defined under 42 U.S.C. Section 1983.

24.     At all times relevant, Defendant Jeremy Roy was a Montgomery County Sheriff's Deputy, holding the rank of Major, acting within the course and scope of his employment with the Montgomery County Sheriff, and under the color of law. Defendant

Roy perpetrated and was directly responsible for the oral rape and sexual assault of Plaintiff Jane Doe 2 as alleged herein and is sued in his individual capacity.

25.     Defendant Roy is a "person" as defined under 42 U.S.C. Section 1983.

## GENERAL FACTUAL ALLEGATIONS

### A PATTERN AND PRACTICE OF EXCESSIVE FORCE AT THE JAIL

26.     At all times relevant, there has been a pattern and practice of excessive force being used at the Montgomery County Jail by employees of the Montgomery County Sheriff's Office against detainees in violation of their clearly established constitutional rights, as well as a pattern and practice of conscious and deliberate disregard for the clearly established rights and safety of detainees at the Jail.

27.     Those patterns and practices are enabled by and a direct result of the lack of training and supervision of Deputies at the Jail, and the policies and procedures promulgated by Defendant Sheriff Streck and the Montgomery County Sheriff's Office.

28.     In 2006, Montgomery County Jail Deputies beat, tased, and placed Louis Aldini, Jr. in a restraint chair in violation of his clearly established constitutional rights.

29.     In 2012, Montgomery County Jail Deputies used excessive force and caused the death of Robert Andrew Richardson, Jr, who was experiencing a medical emergency at the time, by pinning him to the ground in a prone position with his hands cuffed behind his back for more than 20 minutes until he died in violation of his clearly established constitutional rights.

30.     In 2014, Emily Evans was slammed to the ground by a Montgomery County Jail Deputy onto her face suffering multiple facial fractures in violation of her clearly established constitutional rights.

31.     In 2015, Montgomery County Jail Deputies strapped Amber Swink into a restraint chair and a Deputy pepper sprayed her while she was fully retrained, in violation of her clearly established constitutional rights.

32.     Also in 2015, Montgomery County Jail Deputies unlawfully denied medical treatment to Jeffrey Day in violation of his clearly established constitutional rights, who was forced to hobble around the Jail with a broken hip for five days until he was finally released. Upon his release, Mr. Day immediately went to the hospital where he underwent surgery for his injuries.

33.     Again in 2015, multiple Montgomery County Jail Deputies aided in the beating of Joseph Guglielmo, a veteran with PTSD, in violation of his clearly established constitutional rights. Mr. Guglielmo was beaten inside his cell, out of view of the security cameras, for asking for his medication and interrupting a Deputy's roll call.

34.     Also in 2015, a Montgomery County Jail Deputy slammed 60-year-old Marsha Pate-Strickland to the ground fracturing her leg in violation of her clearly established constitutional rights.

35.     In 2016, Montgomery County Jail Deputies pepper sprayed Charles Wade in the face while he was secured in a restraint chair and pinned forward by five Deputies all in violation of his clearly established constitutional rights.

36.     In 2017, Montgomery County Jail Deputies used excessive force on Tonya Varney by shoving her to the ground as she entered her cell, causing multiple fractures to her wrist and hand, in violation of her clearly established constitutional rights.

37.     Montgomery County has agreed to settlements in excess of $10 million to resolve the above referenced, and other, claims of excessive force, deliberate indifference, and unconstitutional conditions and practices at the Jail.

38.     In February 2017, because of these incidents, and others, the Montgomery County Board of Commissioners asked the U.S. Department of Justice to investigate the Jail for civil rights violations against individuals who have sued the County due to the Montgomery County Sheriff's failure to take meaningful action to remedy issues at the Montgomery County Jail.

39.     Since these incidents occurred, upon information and belief, no adequate corrective measures have been taken by the Montgomery County Sheriff, including Defendant Sheriff Streck, to prevent future incidents, or to correct policies, procedures, and failures to train and supervise that caused these incidents.

40.     These incidents of excessive force and violations of detainees' constitutional rights occurred and continue to occur at the Jail because: 1) there is a pattern and practice of assaults and/or excessive force by Montgomery County Jail Deputies against detainees at the Jail; 2) there is inadequate and constitutionally deficient supervision of Jail Deputies; 3) there is a code of silence at the Montgomery County Sheriff's Office regarding deputy misconduct; 4) it was the custom or policy of deputies, the Sheriff, and other supervisors to allow misconduct and to cover it up by way of inadequate and pretextual investigations into uses of force, including those referenced above herein; 5) there is inadequate and constitutionally deficient training of Jail Deputies; and 6) Defendant Sheriff Streck and Montgomery County were on notice of, tolerated, and ratified deputy misconduct.

41.     Defendant Sheriff Streck and the supervisors at the Montgomery County Sheriff's Office were and are deliberately indifferent in allowing, condoning, and failing to deter/punish, and/or adequately investigate repeated Deputy misconduct, in failing to supervise Jail Deputies, and in promulgating the unconstitutional policies and customs discussed in this Complaint. Defendant Sheriff Streck and the supervisors at the Montgomery County Sheriff's Office were and are deliberately indifferent to the federally protected rights of Jail detainees, probationers, parolees, visitors, and the public, including the Plaintiffs.

### RELATED INSTANCES OF SEXUAL ASSAULT AT THE JAIL

42.     On December 18, 2018, Jennifer Myers filed suit against Montgomery County and Montgomery County Jail Deputy Franco Villella in Case No. 3:18-cv-00409-TMR-SLO, alleging Deputy Villella sexually assaulted her in violation of her clearly established constitutional rights and the law. That case is still pending in the District Court for the Southern District of Ohio, and is Related to this case pursuant to Local Rule 3.1.

43.     Ms. Myers alleges that on December 11, 2018, Deputy Villella retrieved her from her cell and took her to a secluded area of the jail, where he "forced himself upon [her], forcing her to engage in sexual intercourse with him, causing physical and emotional injuries."

44.     Ms. Myers alleges that "there are dedicated video security cameras in the area of [her] assault by [Villella] that constantly record the inmates." She further alleges that the Sheriff's Office and the Sheriff himself "viewed and/or should have viewed the videotape" of her assault."

45. On December 21, 2018, Villella was criminally indicted by the Montgomery County Prosecutor on counts of felony sexual battery committed against Ms. Myers at the Montgomery County Jail.

46. Following Villella's criminal indictment for sexual assault at the Montgomery County Jail, another victim came forward alleging two sexual assaults by Deputy Villella, also taking place at the Montgomery County Jail, both of which predated Villella's assaults against Ms. Myers at the Jail.

47. On August 30, 2019, the anonymous victim referenced in the preceding paragraph filed suit as a Jane Doe in Montgomery County Court of Common Pleas, Case No. 2019 CV 03954. In her suit, she alleges that, like Ms. Myers, Deputy Villella took her from her cell to an unoccupied area of the jail where he forced her to engage in sexual relations. In a second assault, Villella entered the woman's cell and again forced her to engage in sexual relations.

48. On or about August 20, 2020, Deputy Villella was found guilty on six counts of sexual battery committed against Ms. Myers at the Montgomery County Jail.

49. Deputy Villella's assaults were a direct and proximate result of Defendant Sheriff Streck's and the Montgomery County Sheriff's Office's policies, customs, and failures to train, investigate and supervise its Jail Deputies, as described above and in Ms. Myers' Complaint.

50. After news of Deputy Villella's assaults became public, upon information and belief, Defendant Sheriff Streck and the Montgomery County Sheriff's Office failed to take any meaningful action to remedy the unconstitutional policies, procedures, and failures to train, investigate, and supervise that caused these sexual assaults. Said

failures directly and proximately caused the constitutional violations and sexual assaults of Plaintiffs, described below.

## PLAINTIFF JANE DOE 1

51.     On or about December 28, 2019, Plaintiff Jane Doe 1 was a detainee at the Montgomery County Jail.

52.     While a detainee at the Montgomery County Jail, Defendant Templeton, in uniform, visited Jane Doe 1 in her housing unit and asked her if she needed any feminine hygiene products. Jane Doe 1 responded that she did, and Defendant Templeton then escorted her out of her housing unit.

53.     Defendant Templeton escorted Jane Doe 1 to a room that appeared to be a utility or storage closet. He walked Jane Doe 1 into the room and shut and locked the door behind him. Inside the room, Defendant Templeton handcuffed Jane Doe 1's hands in front of her.

54.     In the room, Defendant Templeton ordered Jane Doe 1 to turn around (facing away from him), he pulled her pants down, and forcibly raped Jane Doe 1 from behind without her consent, including penetrating her vagina with his penis. Defendant Templeton called Jane Doe 1 a "white bitch" and a "stupid dumb bitch" while sexually assaulting her.

55.     After Defendant Templeton climaxed and finished, he gave Jane Doe 1 paper towels and ordered her to clean herself up. Defendant Templeton took the used paper towels back from Jane Doe 1 and kept them.

56.     Defendant Templeton threatened Jane Doe 1 to "keep her mouth shut" about what had happened.

57.    Defendant Templeton then took Jane Doe 1 back to her housing unit.

**PLAINTIFF JANE DOE 2**

58.    In or about March of 2019, Plaintiff Jane Doe 2 was a detainee at the Montgomery County Jail.

59.    While a detainee at the Montgomery County Jail, Defendant Roy sent a fellow uniformed deputy to retrieve Jane Doe 2 from her housing unit.

60.    Jane Doe 2 was placed in handcuffs by the uniformed deputy and escorted to what she believed to be a visitation room in the jail.

61.    Defendant Roy was present in the room to which the uniformed deputy escorted Jane Doe 2. The deputy escorting Jane Doe 2 placed her in Defendant Roy's custody and left.

62.    Defendant Roy was in uniform.

63.    Defendant Roy said to Jane Doe 2, who was still in handcuffs, "I heard you gave some good head."

64.    Defendant Roy forced Jane Doe 2 down to her knees, grabbed her hair, and forced her to perform oral sex on him.

65.    Jane Doe 2 was restrained in handcuffs for the duration of the assault.

66.    Defendant Roy then escorted Jane Doe 2 back to her housing unit. Before leaving her, Defendant Roy said to Jane Doe 2 in a threatening manner, "You're going to keep quiet?"

67.    In or about July of 2020, Plaintiff Jane Doe 2 was again a detainee at the Montgomery County Jail.

68.     While a detainee at the Montgomery County Jail, Defendant Templeton, in uniform, retrieved Jane Doe 2 from her housing unit.

69.     Defendant Templeton took Jane Doe 2 to an elevator and they rode to another floor in the jail. Defendant Templeton escorted Jane Doe 2 to an empty room.

70.     In the empty room, Defendant Templeton ordered Jane Doe 2 to turn around (facing away from him), he pulled her pants down, and pushed her up against the wall. Defendant Templeton then forcibly raped Jane Doe 2 from behind without her consent, including penetrating her vagina with his penis. Defendant Templeton called Jane Doe 2 a "white bitch" while sexually assaulting her.

71.     After Defendant Templeton climaxed and finished, he gave Jane Doe 2 some wipes and told her to clean herself up. Defendant Templeton took the used wipes back from Jane Doe 2 and kept them inside a plastic bag.

72.     Defendant Templeton then threatened Jane Doe 2 that if she told anyone what just happened, she would never get out of jail.

73.     Defendant Templeton took Jane Doe 2 back to a room where another Deputy escorted her back to her cell.

**PLAINTIFF JANE DOE 3**

74.     In or about August of 2019, Plaintiff Jane Doe 3 was detained in the Montgomery County Jail. Jane Doe 3 understands she subsequently entered a work program in connection with her release that required her to obtain employment following her detention.

75.     While at the Montgomery County Jail, Defendant Templeton told Jane Doe 3 that he could help her obtain the employment she needed to comply with the work program.

76.     In or about mid-August of 2019, following her release from the Montgomery County Jail, Jane Doe 3 went to see Defendant Templeton at the Jail to follow up on his offer to assist her in finding employment that met the terms of her work program.

77.     Jane Doe 3 met Defendant Templeton at the Montgomery County Sheriff's Office building across the street from the Jail. Defendant Templeton took Jane Doe 3 to an empty conference room on the second floor of the building. Defendant Templeton was in uniform.

78.     Jane Doe 3 indicated she had to use the restroom; Defendant Templeton said he would escort her there. Defendant Templeton took Jane Doe 3 down the hall to a small utility or storage closet. He followed her inside and shut the door.

79.     In the closet, Defendant Templeton got behind Jane Doe 3, pulled her pants down, and forcibly raped Jane Doe 3 from behind without her consent, including penetrating her vagina with his penis.

80.     After Defendant Templeton climaxed and finished, he gave Jane Doe 3 a rag and told her to clean herself up. Defendant Templeton took the used rag back from Jane Doe 3 and kept it.

81.     Defendant Templeton threatened Jane Doe 3 that she could not tell anyone about what had happened and that no one would believe her if she did.

82.     Defendant Templeton then escorted Jane Doe 3 out of the building.

**PLAINTIFF JANE DOE 4**

83.     Plaintiff Jane Doe 4 was previously detained at the Montgomery County Jail, where she met Defendant Templeton.

84.     In or about October of 2019, Jane Doe 4 was visiting someone detained at the Montgomery County Jail, when she encountered Defendant Templeton. Defendant Templeton told Jane Doe 4 that he had jobs available for her through some of the programs with which he was involved.

85.     Defendant Templeton, in uniform, escorted Jane Doe 4 across the street from the Jail to the Montgomery County Sheriff's Office building. He took her up to the second floor to an empty conference room.

86.     While in the empty conference room, Defendant Templeton approached Jane Doe 4 from behind, put his hands on her neck, and called her a "dirty slut." He pulled down her pants and forcibly raped her from behind without her consent, including penetrating her vagina with his penis.

87.     After Defendant Templeton climaxed and finished, he gave Jane Doe 4 a towel and told her to clean herself up. Defendant Templeton took the used towel back from Jane Doe 4 and kept it.

88.     Defendant Templeton then threatened Jane Doe 4; he told her she knew what would happen to her and her daughter, who was detained at the jail, if she told anyone.

89.     Defendant Templeton then escorted Jane Doe 4 out of the building.

**PLAINTIFF JANE DOE 5**

90.     Prior to 2017, Plaintiff Jane Doe 5 was detained at the Montgomery County Jail during which time she became an inmate worker. Part of her job was to clean Defendant Templeton's office.

91.     In or about late January of 2020, Jane Doe 5 saw Defendant Templeton at a local church meeting. Defendant Templeton told Jane Doe 5 that he could help her find work, and to come to the Jail to see him. Defendant Templeton made it known that he could assist detainees with work programs and opportunities upon their release.

92.     In February of 2020, Jane Doe 5 went to see Defendant Templeton at the Jail per his invitation. She entered the Jail and saw Defendant Templeton in the lobby. Defendant Templeton, in uniform, escorted Jane Doe 5 to his office.

93.     Defendant Templeton told Jane Doe 5 that he would pay her to clean his office, as she used to when she was an inmate worker detained at the jail, and that she could start immediately.

94.     While Jane Doe 5 was cleaning his office, Defendant Templeton came up behind her and grabbed her. Defendant Templeton pulled down Jane Doe 5's pants and forcibly raped her from behind without her consent, including penetrating her vagina with his penis. Defendant Templeton called Jane Doe 5 a "stupid white bitch" while sexually assaulting her.

95.     After Defendant Templeton climaxed and finished, he gave Jane Doe 5 some wipes and ordered her to clean herself up. Defendant Templeton took the used wipes back from Jane Doe 5 and kept them.

96.     Defendant Templeton threatened Jane Doe 5 not to tell anyone what had happened. He told Jane Doe 5 that he knew where she lived and that she had children.

97.     Defendant Templeton walked Jane Doe 5 back to the elevator to leave the Jail.

## **FIRST CLAIM FOR RELIEF**

**(Violation of 42 U.S.C. § 1983 By All Plaintiffs Against Defendant Willie Templeton, Jr. In His Individual Capacity and By Plaintiff Jane Doe 2 Against Defendant Jeremy Roy In His Individual Capacity for Excessive Force in Violation of the Fourth and/or Fourteenth Amendments)**

98.     Plaintiffs restate the above paragraphs by reference as if fully rewritten herein.

99.     Defendants Templeton and Roy's sexual assault and forcible rape of the Plaintiffs, as alleged and described herein above, while in uniform and on duty at the Montgomery County Jail, constituted conduct under the color of state law that deprived the Plaintiffs of their clearly established and known constitutional rights.

100.    As a direct and proximate result of the foregoing conduct, Defendant Templeton deprived Plaintiffs Jane Doe 1 and Jane Doe 2, pretrial detainees at the Montgomery County Jail, of their clearly established and known rights under the Fourteenth Amendment of the United States Constitution.  More specifically, Defendant Templeton deprived these Plaintiffs of: (1) their right to be free from a deprivation of life and liberty without due process of law; and (2) their right to be free from the use of excessive, outrageous and unreasonable force.

101.    As a direct and proximate result of the foregoing conduct, Defendant Roy deprived Plaintiff Jane Doe 2, a pretrial detainee at the Montgomery County Jail, of her clearly established and known rights under the Fourteenth Amendment of the United

States Constitution. More specifically, Defendant Roy deprived this Plaintiff of: (1) her right to be free from a deprivation of life and liberty without due process of law; and (2) her right to be free from the use of excessive, outrageous, and unreasonable force.

102. As a direct and proximate result of the foregoing conduct, Defendant Templeton deprived Plaintiffs Jane Doe 3, Jane Doe 4, and Jane Doe 5 of their clearly established and known rights under the Fourth Amendment of the United States Constitution. More specifically, Defendant Templeton deprived these Plaintiffs of: (1) their right to be free from unreasonable search and seizure, and (2) their right to be free from the use of excessive, outrageous, and unreasonable force.

103. As a direct and proximate result of Defendants Templeton and Roy's violations of each Plaintiffs' constitutional rights as described in this Claim for Relief, each Plaintiff was forced to endure and suffered extreme physical, mental and emotional pain and suffering, and pecuniary loss, including medical expenses and lost earnings and/or benefits.

**WHEREFORE,** all Plaintiffs pray for judgment against Defendant Templeton for:

      a)     Compensatory damages in an amount that will fully and fairly compensate Plaintiffs for their injury, damage and loss;

      b)     Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

      c)     Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

      d)     All such other relief which the Court deems appropriate.

**WHEREFORE,** Plaintiff Jane Doe 2 prays for judgment against Defendant Roy for:

a) Compensatory damages in an amount that will fully and fairly compensate Plaintiff for her injury, damage and loss;

b) Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

c) Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

d) All such other relief which the Court deems appropriate.

## <u>SECOND CLAIM FOR RELIEF</u>

**(Violation of 42 U.S.C. § 1983 By All Plaintiffs Against Defendant Templeton In His Individual Capacity and By Plaintiff Jane Doe 2 Against Defendant Roy In His Individual Capacity for Violation of Plaintiffs' Rights to Personal Security And Bodily Integrity From Sexual Assault in Violation of Fourteenth Amendment.)**

104. Plaintiffs restate the above paragraphs by reference as if fully rewritten herein.

105. Defendants' sexual assault and forcible rape of the Plaintiffs, while in uniform and on duty for the Montgomery County Sheriff, constituted conduct under the color of state law that deprived the Plaintiffs of their clearly established and known constitutional rights.

106. As a direct and proximate result of the foregoing conduct, Defendant Templeton deprived each Plaintiff of her clearly established and known rights under the Fourteenth Amendment of the United States Constitution. More specifically, Defendant Templeton deprived the Plaintiffs of: (1) their right to personal security; and (2) their right to bodily integrity from sexual abuse or sexual assault.

107. As a direct and proximate result of the foregoing conduct, Defendant Roy deprived Plaintiff Jane Doe 2 of her clearly established and known rights under the

Fourteenth Amendment of the United States Constitution. More specifically, Defendant Roy deprived this Plaintiff of: (1) her right to personal security; and (2) her right to bodily integrity from sexual abuse or sexual assault.

108. As a direct and proximate result of Defendant Templeton and Roy's violations of each Plaintiffs' constitutional rights as described in this Claim for Relief, each Plaintiff was forced to endure and suffered extreme physical, mental and emotional pain and suffering, and pecuniary loss, including medical expenses and lost earnings and/or benefits.

**WHEREFORE,** all Plaintiffs pray for judgment against Defendant Templeton for:

a) Compensatory damages in an amount that will fully and fairly compensate Plaintiffs for their injury, damage and loss;

b) Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

c) Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

d) All such other relief which the Court deems appropriate.

**WHEREFORE,** Plaintiff Jane Doe 2 prays for judgment against Defendant Roy for:

a) Compensatory damages in an amount that will fully and fairly compensate Plaintiff for her injury, damage and loss;

b) Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

c) Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

d) All such other relief which the Court deems appropriate.

### THIRD CLAIM FOR RELIEF

### (Violation of 42 U.S.C. § 1983 By All Plaintiffs Against Defendant Sheriff Streck, in His Official Capacity

109. Plaintiffs restate the above paragraphs by reference as if fully rewritten herein.

110. Plaintiffs are informed and believe and thereon allege that Defendant Sheriff Streck knew or should have known of a history, custom, propensity, practice, and/or pattern at times relevant to the allegations herein for Montgomery County Jail Deputies and employees at the Montgomery County Jail to violate the constitutional rights of detainees and/or visitors; to sexually assault female detainees and/or visitors; to use unlawful excessive and unreasonable force on detainees and/or visitors; and to allow, condone and/or fail to adequately investigate and punish Jail Deputies' violations of the clearly established constitutional rights of detainees and/or members of the public visiting the jail.

111. Defendant Sheriff Streck's disregard of this knowledge, or failure and/or refusal to adequately investigate and discover and correct such history, customs and propensities, proximately caused the violation of the clearly established constitutional rights of Plaintiffs as alleged herein.

112. Plaintiffs are informed and believe and thereon allege that prior to and at the time of the incidents alleged herein, Defendant Sheriff Streck, Defendant Templeton, Defendant Roy, the Montgomery County Sheriff's Office, and Montgomery County deputies, officers, employees, and agents, acting under their authority as officers and/or

within the course and scope of their employment with the Montgomery County Sheriff, committed similar acts, about which Defendant Sheriff Streck knew, of:

a)    Using excessive, unlawful, and unreasonable force at the Jail;

b)    Sexually assaulting and/or abusing female detainees and/or visitors at the Jail; and

c)    Failing to prevent, report, or investigate known incidents of excessive force or sexual assault and abuse of detainees and/or visitors at the jail;

113.    Plaintiffs are informed and believe and thereon allege that the Defendant knew or should have known of or were otherwise deliberately indifferent to, this pattern or practice of unconstitutional violations, or the existence of facts, practices, customs and/or habits, which create the strong likelihood and certainty that unconstitutional acts in violation of clearly established constitutional rights will occur, and Defendant Sheriff Streck had a duty to supervise, investigate, train, and instruct deputies and subordinates to prevent similar acts to others at the Montgomery County Jail, including the Plaintiffs, but failed and/or refused to take reasonable and necessary steps to properly supervise, train, instruct, or investigate deputies and agents or employees of the Montgomery County Sheriff, and as a direct and proximate result, Plaintiffs were harmed in the manner threatened by the pattern(s) or practice(s) alleged herein.

114.    At all times relevant, the Defendant had the duty:

a)    To train, supervise and instruct deputies, officers, and other agents and employees to ensure that they respected and did not violate federal constitutional and statutory rights of detainees and

visitors at the Montgomery County Jail with regard to the reasonable and appropriate use of force;

b)      To adequately investigate incidents of deputies' inappropriate contact with inmates, detainees, and/or visitors to the jail and to take necessary remedial action;

c)      To install and monitor security cameras to prevent deputies' inappropriate contact with inmates, detainees and/or visitors to the jail;

d)      To track and monitor deputies' interactions with inmates, detainees, and/or visitors to the jail;

e)      To train, encourage, and require deputies to monitor and report other deputies' inappropriate contact with detainees and/or visitors to the jail;

f)      To comply with the statutory guidelines and the standard(s) of care protecting detainees and/or visitors at the Montgomery County Jail; and

g)      To adequately discipline and establish reasonable procedures to document and correct past violations, and to prevent future violations of constitutional rights of detainees and/or visitors at the Montgomery County Jail by not condoning, ratifying, and/or encouraging the violation of the Plaintiffs' and others' constitutional rights.

115.   The Defendant breached the foregoing duties by:

a) Failing and/or refusing to train, supervise and instruct deputies, officers, and other employees of the Montgomery County Sheriff at the Montgomery County Jail, on the violations of the constitutional rights of Plaintiffs and others;

b) Failing and/or refusing to objectively investigate sexual assaults and sexual abuse, in-custody injury, and incidents of in-custody use of excessive force, and failing and/or refusing to take necessary remedial action;

c) Failing and/or refusing to monitor Jail security cameras, corrections officers' interactions with detainees and visitors, and areas of the Jail in which Defendant knows, or should know, that sexual assaults are likely to occur and do occur;

d) Failing and/or refusing to comply with the statutory guidelines and the standard(s) of care protecting detainees and visitors at the Montgomery County Jail;

e) Failing and/or refusing to adequately discipline and establish reasonable procedures to document and correct past violations, and to prevent future violations of constitutional rights of detainees at the Montgomery County Jail, by not condoning, ratifying and/or encouraging the violation of the Plaintiffs' and others' constitutional rights;

f) Failing and/or refusing to adequately and periodically train Jail Deputies on understanding, recognizing, reporting and

responding to issues of sexual abuse and assault of detainees and visitors at the Montgomery County Jail; and

g) Overseeing, supervising, authorizing, approving of and/or ratifying the continued sexual abuse and assault of female detainees and visitors, including the Plaintiffs, at the Montgomery County Jail.

116. The aforementioned failures were the direct and proximate cause of the constitutional rights violations suffered by the Plaintiffs.

117. As a direct and proximate result of Defendant Sheriff Streck's and the Montgomery County Sheriff's Office's violations of each Plaintiff's clearly established constitutional rights as described in this Complaint, each Plaintiff was forced to endure and suffer extreme physical, mental and emotional pain and suffering, and pecuniary loss, including medical expenses and lost earnings and/or benefits.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant Sheriff Streck for:

a) Compensatory damages in an amount that will fully and fairly compensate Plaintiffs for their injury, damage and loss;

b) Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

c) All such other relief which the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF

### (Violation of 42 U.S.C. § 1983 By All Plaintiffs Against Defendant Sheriff Streck in His Official Capacity.)

118. Plaintiffs restate the above paragraphs by reference as if fully rewritten herein.

119. On information and belief, at all times relevant, Defendant Sheriff Streck and the Montgomery County Sheriff's Office promulgated and maintained a *de facto* unconstitutional custom, policy or practice of permitting, ignoring and condoning and/or encouraging officers, deputies, and other employees and agents to engage in, ignore, and fail to prevent deputies' inappropriate interaction with, access to, and sexual contact with female detainees and visitors at the Montgomery County Jail, including the Plaintiffs, all of which shocks the conscience and offends traditional notions of decency.

120. On further information and belief, at all times relevant, it was the custom, policy, and practice at the Montgomery County Jail to allow and enable male deputies to take female detainees or visitors to private areas of the Jail/facility/complex where there are no cameras or supervision.

121. On further information and belief, at all times relevant, it was the custom, policy, and practice at the Montgomery County Jail to fail to keep records of deputies' interactions with female detainees or visitors in order to facilitate continued inappropriate contact with those females.

122. These customs, policies and/or practices were and are promulgated by Defendant Sheriff Streck, in his Official Capacity, and the Montgomery County Sheriff's Office.

123. These customs, policies, and/or practices were the direct and proximate cause of the constitutional violations visited upon, and the injuries of, the Plaintiffs, and Defendants Templeton and Roy acting in accordance with these customs, policies or practices sexually assaulted Plaintiffs, used excessive, unreasonable, outrageous and

impermissible force, and/or otherwise acted in a manner that shocks the conscience and offends traditional notions of decency.

124. At all times relevant, the policies, customs, and/or procedures referenced in this Claim for Relief were facially and/or *de facto* violative of the clearly established and known rights of detainees at and/or visitors to the Montgomery County Jail and the public, including Plaintiffs, and their implementation and/or the tolerance thereof constitutes deliberate indifference to and/or reckless and callous disregard for the clearly established constitutional rights of said detainees and the public, including Plaintiffs, secured by the Fourth and Fourteenth Amendments of the United States Constitution, including the right to due process of law, life, liberty and to be free from excessive and unreasonable uses of force which shock the conscience and offend traditional notions of decency, and to be free from unreasonable search and seizure.

125. At all times relevant, the policies, customs and/or procedures referenced in this Claim for Relief were applied and/or tolerated or condoned in such a manner, and known by Defendant Sheriff Streck to be applied in such a manner, such that violations of the clearly established constitutional rights of detainees at the Montgomery County Jail and the public, including Plaintiffs, were likely and substantially certain to, and did, occur. Furthermore, the application and/or misapplication of these policies, practices and/or procedures amount to violations of the clearly established constitutional rights of said detainees and the public, including Plaintiffs, secured by the Fourth and Fourteenth Amendments to the United States Constitution, including the right to due process of law, life, liberty, and to be free from unreasonable search and seizure and excessive and

unreasonable uses of force which shock the conscience and offend traditional notions of decency.

126.   As a direct and proximate result of Defendant Sheriff Streck and the Montgomery County Sheriff's Office's violations of each Plaintiff's clearly established constitutional rights as described in this Complaint, each Plaintiff was forced to endure and suffer extreme physical, mental and emotional pain and suffering, and pecuniary loss, including medical expenses and lost earnings and/or benefits.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant Sheriff Streck for:

a)   Compensatory damages in an amount that will fully and fairly compensate Plaintiffs for their injury, damage and loss;

b)   Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

c)   All such other relief which the Court deems appropriate.

## FIFTH CLAIM FOR RELIEF

**(Intentional Infliction of Emotional Distress By All Plaintiffs Against Defendant Templeton In His Individual Capacity and By Plaintiff Jane Doe 2 Against Defendant Roy, In His Individual Capacity)**

127.   Plaintiffs restate and incorporate the above paragraphs as if fully rewritten herein.

128.   Defendant Templeton sexually assaulted the Plaintiffs, acting in the course and scope of his position as a Deputy with the Montgomery County Sheriff's Office. Defendant Templeton used his position of power over the Plaintiffs, who were either detainees or former detainees at the Montgomery County Jail, to physically force Plaintiffs

to engage in sexual relations with him. Defendant Templeton threatened the Plaintiffs with further incarceration and/or physical harm if Plaintiffs reported the assaults.

129. Defendant Roy sexually assaulted Plaintiff Jane Doe 2, acting in the course and scope of his position as a Deputy with the Montgomery County Sheriff's Office. Defendant Roy used his position of power over this Plaintiff, who was a detainee at the Montgomery County Jail, to physically force her to engage in sexual relations with him. Defendant Roy threatened this Plaintiff with further incarceration and/or physical harm if she reported the assault.

130. Defendant Templeton and Roy's conduct as described in this Claim for Relief was extreme, outrageous, and shocks the conscience.

131. These acts committed against Plaintiffs directly and proximately caused each of them to sustain serious physical injury, mental pain and suffering, and extreme emotional distress.

132. Defendants Templeton and Roy committed these acts with malice aforethought, such that Plaintiffs are entitled to punitive damages.

133. As a direct and proximate result of Defendant Templeton and Roy's unlawful acts of sexual assault described in this Claim for Relief, each Plaintiff was forced to endure and suffer extreme physical, mental, and emotional pain and suffering, and pecuniary loss, including medical expenses and lost earnings and/or benefits.

**WHEREFORE,** all Plaintiffs pray for judgment against Defendant Templeton for:

    a)    Compensatory damages in an amount that will fully and fairly compensate Plaintiffs for their injury, damage and loss;

b) Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

c) Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

d) All such other relief which the Court deems appropriate.

**WHEREFORE,** Plaintiff Jane Doe 2 prays for judgment against Defendant Roy for:

a) Compensatory damages in an amount that will fully and fairly compensate Plaintiff for her injury, damage and loss;

b) Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

c) Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

d) All such other relief which the Court deems appropriate.

## SIXTH CLAIM FOR RELIEF

### (Assault and Battery by Plaintiffs Jane Doe 1 and Jane Doe 2 Against Defendant Templeton In His Individual Capacity)

134. Plaintiffs restate and incorporate the above paragraphs as if fully rewritten herein.

135. Defendant Templeton intentionally and unlawfully threatened Plaintiffs with unwanted sexual contact, physical harm, and violence against their person, as described in this Complaint. It appeared, and ultimately proved to be true, that Defendant Templeton had the ability to carry out the threats of physical and sexual harm and violence against

the Plaintiffs. As a direct and proximate result, the Plaintiffs were placed in imminent fear of harm by Defendant Templeton.

136.   Defendant Templeton sexually assaulted the Plaintiffs, acting in the course and scope of his positions as a Deputy with the Montgomery County Sheriff's Office. Defendant Templeton used his positions of power over the Plaintiffs, who were detainees at the Montgomery County Jail, to force them to engage in sexual relations with him.

137.   These acts committed against Plaintiffs directly and proximately caused each of them to sustain serious physical injury, mental pain, and suffering.  Said acts constitute unlawful assault and battery.

138.   Defendant Templeton committed these acts with malice aforethought, such that Plaintiffs are entitled to punitive damages.

139.   As a direct and proximate result of Defendant Templeton's unlawful acts of assault and battery described herein, each Plaintiff was forced to endure and suffer extreme physical, mental and emotional pain and suffering, and pecuniary loss, including medical expenses and lost earnings and/or benefits.

**WHEREFORE,** Plaintiffs Jane Doe 1 and 2 pray for judgment against Defendant Templeton for:

       a)   Compensatory damages in an amount that will fully and fairly compensate Plaintiffs for their injury, damage and loss;

       b)   Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

       c)   Costs of suit and reasonable attorneys' fees; and

       d)   All such other relief which the Court deems appropriate.

**SEVENTH CLAIM FOR RELIEF**

**(Civil Liability for Criminal Acts pursuant to R.C. 2307.60 by Plaintiffs Jane Doe 1 and Jane Doe 2 Against Defendant Templeton In His Individual Capacity)**

140.    Plaintiffs restate and incorporate the above paragraphs as if fully rewritten herein.

141.    Defendant Templeton intentionally and unlawfully committed sexual battery and rape against Plaintiffs in violation of R.C. 2907.02 and R.C. 2907.03.

142.    Defendant Templeton sexually assaulted the Plaintiffs, acting in the course and scope of his position as a Deputy with the Montgomery County Sheriff's Office. Defendant Templeton used his position of power over the Plaintiffs, who were detainees at the Montgomery County Jail, to force them to engage in sexual relations with him.

143.    These acts committed against Plaintiffs directly and proximately caused each of them to sustain serious physical injury, mental pain, and suffering.  Said acts constitute unlawful sexual assault, rape and sexual battery under R.C. 2907.02 and R.C. 2907.03.

144.    Defendant Templeton committed these acts with malice aforethought, such that Plaintiffs are entitled to punitive damages.

145.    As a direct and proximate result of Defendant Templeton's unlawful and criminal acts described herein, each Plaintiff was forced to endure and suffer extreme physical, mental, and emotional pain and suffering, and pecuniary loss, including medical expenses and lost earnings and/or benefits.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant Templeton for:

a)      Compensatory damages in an amount that will fully and fairly

compensate Plaintiffs for their injury, damage and loss;

b)      Punitive damages in an amount that will serve to adequately

punish and deter the conduct alleged herein;

c)      Costs of suit and reasonable attorneys' fees; and

d)      All such other relief which the Court deems appropriate.

**TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.**

/s/ Nicholas A. DiCello
NICHOLAS A. DICELLO (0075745)
MICHAEL P. LEWIS (0099621) *(Motion for Leave to Appear Pro Hac Vice Forthcoming)*
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (FAX)
*ndicello@spanglaw.com*
*mlewis@spanglaw.com*

**Counsel for Plaintiffs**